1  Elan S. Mizrahi (NV Bar No. 7450)
   E-mail: esm@jhc-law.com
2  **JENNINGS, HAUG & CUNNINGHAM, LLP**
   2800 N. Central Ave., Suite 1800
3  Phoenix, Arizona 85004-1049
   602-234-7800
4

5  David J. Rivers (NV Bar No. 384)
   **LEAVITT, SULLY & RIVERS**
6  601 E. Bridger Avenue
   Las Vegas, Nevada 89101
7  702-382-5111

8  Attorneys for Plaintiff

9

10             **UNITED STATES DISTRICT COURT**

11                  **DISTRICT OF NEVADA**

12
   TRAVELERS CASUALTY AND SURETY        Case No.: 2:12-cv-00058-KJD -RJJ
13 COMPANY OF AMERICA, a Connecticut
   corporation,                         MOTION FOR PRELIMINARY
14                                       INJUNCTION
                        Plaintiff,
15
   vs.
16
   WILLIAMS BROTHER, INC., an Nevada
17 corporation; PEEK CONSTRUCTION
   COMPANY, a Nevada corporation;
18 MICHAEL WILLIAMS, an individual;
   JOSIE WILLIAMS, an individual; ASHLEY
19 WILLIAMS, an individual; MARIA
   WILLIAMS, an individual; MARK
20 GUBLER, an individual; DAWNA
   GUBLER, an individual; DARIN GUBLER,
21 an individual; and KAREN GUBLER, an
   individual; BRENDA COMPTON PEEK, an
22 individual; MICHAEL L. PEEK, an
   individual; ECCL HOLDINGS, LLC, a
23 Nevada limited liability company;; BLC
   NEVADA TRUST DATED APRIL 20, 2006,
24 a Nevada Trust;

25                      Defendants.

26        Plaintiff Travelers Casualty and Surety Company of America ("Travelers") moves

27 the Court, for its order requiring defendants Williams Brother, Inc. ("WBI") and Peek

28 Construction Company ("PCC") to provide full access to their books and records, project

1   files, including daily logs, subcontracts, purchase orders, change orders, bank account

2   statements, and canceled checks.  This motion is supported by the Complaint, the exhibits

3   attached thereto, the Declaration of Gerald M. Ormiston, and the supporting Memorandum

4   of Points and Authorities.

5                    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

6   **I.      BACKGROUND FACTS**

7           As alleged in the Complaint, and as set forth in the supporting declaration of Gerald

8   M. Ormiston (attached hereto as Exhibit "A;" hereafter, "Ormiston Declaration"), Travelers

9   is a surety company that stands as surety for selected contractors. WBI and PCC are

10  contractors that were required to provide payment and performance bonds on certain

11  public works projects.   Because Nevada state law requires that all public works be

12  performed by a construction company that is bonded, the surety that writes these bonds

13  requires the company's owners, principals and related companies, to exonerate, indemnify

14  and collateralize the surety against loss by signing a General Agreement of Indemnity

15  ("GAI").

16          To induce Travelers to issue bonds, WBI and PCC each executed a GAI, copies of

17  which were attached to the complaint in this matter as Exhibits "A" and "B."[1]  Under the

18  terms of the GAIs, WBI and PCC agreed to "exonerate, indemnify and save [Travelers]

19  harmless from and against all Loss."[2]

20          Most pertinent to Travelers' immediate needs, and the basis for this motion, is the

21  agreement of WBI and PCC to "furnish upon demand . . . the records of Indemnitors

22  including, but not limited to, books, papers, records, documents, contracts, reports,

23  financial information, accounts and electronically stored information . . . ."[3]  This clause –

24  the "books and records" clause – is critical in instances such as present themselves here, as it

25  provides Travelers with the assurances that critical documentation is available for Travelers to

26  determine the financial health of WBI and PCC; to determine the status of bonded projects; to

27

28  [1]  PCC's obligations under its GAI were accepted by Rider attached to a prior GAI executed by the predecessor to PCC. Ormiston Declaration, ¶ 3.
[2]  Ormiston Declaration, ¶ 4.
[3]  Ormiston Declaration, ¶ 9.

1  evaluate and adjust payment bond claims; and to take steps based on the conditions revealed in

2  the documentation.

3       Since 2009, Travelers issued over $29 million dollars of bonds on behalf of WBI and

4  over $40 million of bonds on behalf of PCC (collectively, the "Bonds").[4]   Travelers

5  undertook this almost $70 million of potential outstanding liability in specific reliance on

6  the promises made by WBI and PCC in their GAIs.  If either WBI or PCC defaulted in their

7  obligations under any or all of the projects bonded by Travelers, Travelers would be

8  required to respond quickly and to enforce the promises contained in the GAI.

9  Unfortunately, this is the exact situation in which Travelers finds itself in.  However, WBI

10  and PCC seek to renege on the very promises that induced Travelers to expose itself to

11  liability on the Bonds.  Travelers requests, by virtue of this motion, the Court's assistance.

12  **Adjusting Payment Bond Claims**

13       In 2011, Travelers began receiving claims against the Bonds by unpaid

14  subcontractors and suppliers of both WBI and PCC.  Many lawsuits have been filed against

15  Travelers on the Bonds.[5]  As Travelers attempted to work through the claims and lawsuits,

16  the owners of WBI and PCC refused to cooperate with Travelers, refused to indemnify

17  Travelers, failed to post collateral, and, most pertinent to this motion, failed to provide

18  access to the books and records upon Travelers' demand and as required by the GAIs.[6]

19  Travelers, to date, has paid bond claims, including costs and attorneys' fees, in the current

20  amounts of $2,529,574.07 as to WBI Bonds and $2,317,308.41 as to PCC Bonds.[7]

21       Additional claims are asserted against the Bonds that Travelers will be forced to pay

22  and it will continue to incur costs, expenses, and attorney fees.[8]  At this time, Travelers'

23  total loss cannot be accurately estimated.[9]  Travelers has set initial reserves of $3,098,505 for

24  WBI, additional reserves of $5,872,172 for PCC, and additional reserves of $50,000 for El

25

26  [4] Ormiston Declaration, ¶ 11.
   [5] Ormiston Declaration ¶ 12.
27  [6] Ormiston Declaration ¶ 13.
   [7] Ormiston Declaration ¶ 14.
28  [8] Ormiston Declaration ¶ 15.
   [9] In part, because WBI and PCC deny Travelers access to the books and records needed for such a
   determination.

Camino Construction, PCC's predecessor, to cover its initial projected Loss related to bonds issued for these entities.[10]

Without immediate access to WBI's and PCC's books and records, Travelers is unable to accurately adjust additional claims or defend itself in the numerous lawsuits against its Bonds.[11]  Without immediate access to the project records, statements of account for each project, canceled checks and bank statements, Travelers cannot determine what claimants have been paid and, if so, how much.[12]

**Determining Project Status and Preparing to Complete Public Projects**

Recently, Travelers has discovered that WBI's and PCC's progress on bonded projects has slowed or stopped altogether and owner notices of defaults are imminent.[13]  As WBI and PCC shut down operations, any additional delay in completing the bonded public works projects will result in increased costs, decreased contract balances due to assessment of liquidated damages, and delay to the public's use of these important projects.[14]  Travelers needs immediate access to the project records and all financial records to assess the state of the projects and to complete those projects after the owners declare default.   Without immediate access to WBI's and PCC's project records, Travelers cannot address the current issues on these important public projects to further their completion as will be required.[15]

**Sales of Travelers' Collateral**

To further increase the exigency of the requirement for access to WBI's and PCC's records, Travelers has been informed that WBI and PCC have been selling off their equipment at auctions, which equipment is subject to Travelers' security interest, and, in some instances, have obtained the proceeds in derogation of Travelers' rights under the GAIs and its security interest.[16]  In the GAIs, WBI and PCC granted Travelers a security interest in their equipment, accounts, deposits, letter of credit rights, securities, all contract

---

[10] *Id.*
[11] Ormiston Declaration, ¶ 16.
[12] *Id.*
[13] Ormiston Declaration, ¶¶ 18, 19.
[14] Ormiston Declaration, ¶ 19.
[15] Ormiston Declaration, ¶ 19.
[16] Ormiston Declaration, ¶ 20.

rights, and all "General Intangibles." (collectively, the "Collateral")[17]  Travelers perfected that interest by filing with the Nevada Secretary of State's Office.[18]  PCC has not provided the necessary documentation to allow Travelers to determine its interests and what proceeds, if any, are due Travelers as a result of these sales.[19]

Additionally, Travelers has been informed that a lot of equipment is scheduled for public auction on January 27, 2012.[20]  Prior UCC interests have been recorded against this equipment, and other pieces of equipment.  Without immediate access to WBI's and PCC's books and records, including bank statements showing amounts owed to WBI's and PCC's bank, debt records on equipment on which prior lenders have interests, and other such prior or secondary debts, Travelers is unable to determine what its rights are to the proceeds of any such auction.[21]  If the equipment is sold in the ordinary course on January 27 to a good faith buyer in due course, and the proceeds are distributed to WBI and/or PCC, Travelers will be without legal recourse to maintain its rights in that equipment and/.or proceeds.[22]  Unless Travelers is provided immediate access to WBI's and PCC's books and records, it cannot determine its rights in that equipment, in other equipment, and in the proceeds of such prior and future sales.[23]

Travelers has been informed that the timing of the January 27 sale is critical and an opportunity to generate significantly more proceeds will be lost if the auction does not take place on January 27.[24]  Unless Travelers is granted immediate access and/or provided the books and records related to this equipment, Travelers will be unable to determine its rights in that equipment and the sale may be jeopardized.[25]

///

///

---

[17] Ormiston Declaration, ¶ 7.
[18] Ormiston Declaration, ¶ 8.
[19] *Id.*
[20] Ormiston Declaration, ¶ 22.
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] Ormiston Declaration, ¶ 23.
[25] Ormiston Declaration, ¶ 23.

1  **Affirmative Claims**

2       Finally, again increasing the urgent need for the documentation requested in this

3  motion, Travelers has discovered numerous affirmative claims are being pursued by WBI

4  and PCC against various owners on certain projects.[26]  Travelers has the prior rights in

5  these affirmative claims by virtue of the losses incurred on bonds issued by Travelers for

6  these public projects, its common law indemnity rights, and its UCC-related rights as

7  granted under the GAIs.[27]   Travelers is informed that WBI and/or PCC have been

8  attempting to settle these claims, and others unknown to Travelers, obtain the proceeds

9  thereof in derogation of Travelers' prior rights.[28]  Unless Travelers is granted immediate

10 access and/or provided copies of the project records for the projects on which affirmative

11 claims are being asserted, as well as the documentation of the claims themselves, Travelers

12 will be unable to determine the substance of such claims as well as the existence of

13 unknown claims to assert its prior interests, increasing Travelers' loss.[29]

14 **II.    LEGAL ANALYSIS**

15      As this Court sits in diversity, it must apply the substantive law of the forum state;

16 in this case, Nevada. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938);

17 accord *Sims Snowboards, Inc. v. Kelly*, 863 F.2d 643, 646-47 (9th Cir.1988)(Federal Rule of

18 Civil Procedure 65 addresses only the procedural aspects of injunctive relief; state law

19 controls whether injunctive relief is appropriate).

20      Nevada's injunction standards, codified in N.R.S. § 33.010, have long been a part of

21 Nevada law. See, *e.g.*, *Chisholm v. Redfield*, 75 Nev. 502, 347 P.2d 523 (Nev.1959)(affirming

22 preliminary and permanent injunctions requiring the defendant to allow the lender to

23 operate defendant's lumber yards until sufficient moneys realized to reimburse lender

24 funds advanced for financing and operating same).  Under Nevada law, injunctive relief

25 may be granted if there is no adequate remedy at law, a balancing of equities favors the

26 moving party, and success on the merits is demonstrated. *Chateau Vegas Wine, Inc. v.*

27
28  [26] Ormiston Declaration, ¶ 24.
    [27] Ormiston Declaration, ¶ 25.
    [28] Ormiston Declaration, ¶ 26.
    [29] Ormiston Declaration, ¶ 27.

1  *Southern Wine and Spirits of America, Inc.*, 265 P.3d 680 (Nev.2011) citing *State Farm Mut.*
2  *Auto. Ins. v. Jafbros Inc.*, 109 Nev. 926, 928, 860 P.2d 176, 178 (1993)(injunction may issue to
3  restrain a wrongful act that gives rise to a cause of action).

4      **A. Travelers has no adequate remedy at law.**

5      Well-settled law holds that sureties are entitled to specific performance of indemnity
6  provisions, such as collateral security provisions, because the surety lacks an adequate
7  remedy at law. *Safeco Ins. Co. of Am. v. Schwab*, 739 F.2d 431, 433 (9th Cir.1984)("Sureties are
8  ordinarily entitled to specific performance of collateral security clauses."); see also
9  *Milwaukie Constr. Co. v. Glens Falls Ins. Co.*, 367 F.2d 964, 966 (9th Cir.1965)("[W]here [a
10  surety knows it will] have liability claims filed against it but [does] not know the amount of
11  those claims, the legal remedy of money damages [is] not adequate."); accord *Hartford Fire*
12  *Ins. Co. v. Universal Import, LLC*, 2009 WL 4042699 (D.Nev.2009); see also *Liberty Mut. Ins.*
13  *Co. v. Aventura Eng'g & Constr. Corp.*, 534 F.Supp.2d 1290, 1321 (S.D.Fl.2008)("a surety's loss
14  of its right to collateralization cannot be adequately remedied through monetary
15  damages.")(citing *United States Fid. & Guar. Co. v. Feibus*, 15 F.Supp.2d 579 (M.D.Pa.1998);
16  *United Bonding Ins. Co. v. Stein*, 273 F.Supp. 929 (E.D.Pa.1967)(legal remedy for subsequent
17  damages will not suffice when indemnitor refuses to voluntarily comply with surety's
18  demands under GAI); see also *Serpa v. Darling*, 107 Nev. 299, 305, 810 P.2d 778, 782
19  (1991)(specific performance available when the remedy at law is inadequate).

20      Travelers' remedies at law are inadequate in this case.  Travelers must be able to
21  economically adjust payment bond claims, successfully defend payment bond lawsuits by
22  asserting defenses such as prior payment and release by the use of bank records and
23  canceled checks, quickly mobilize completion contractors for abandoned projects by use of
24  the project records such as plans, daily logs, and correspondence, and identify available
25  assets and its rights therein, including those in equipment and affirmative claims.  The
26  documents that are the subject of this motion are unique and cannot be readily duplicated,
27  if at all.
28  / / /

As outlined in the Ormiston declaration, there is an auction of certain equipment, in which Travelers has a security interest, set for Jan 27, 2012. WBI and PCC have failed and refused to provide Travelers with the information necessary for Travelers to determine its rights in any of the equipment to be sold at auction. Unless the books and records are produced prior to that date, Travelers may lose valuable rights due to the loss of equipment and the proceeds thereof, once the equipment is sold in the ordinary course to a bona fide purchaser for value. The required information includes records that will show current balance owed to WBI's and PCC's bank, and Cashman Equipment, both of whom appear to have prior UCC security interests, and a current list of all equipment, its current location, as well as any appraisals, contracts for auction, and records of transfers of the equipment.

Additionally, Travelers is unaware of WBI's and PCC's remaining obligations to other parties. Assets, including contract funds, equipment, accounts receivable, assets placed improperly in self-settled trusts, all rightfully secured by the GAIs may be applied to other debts and or secreted. The funds, proceeds of the sale of equipment, affirmative claims of WBI and PCC could be misdirected to accounts of other companies or individuals. A judgment for traditional money damages received later will be inadequate in this case of limited assets for indemnification if Travelers is denied the ability to procure the books and records to identify the available assets secured by the GAIs and the remaining responsibilities under the bonds issued on behalf of WBI and PCC.

**B. The balance of equities favors Travelers.**

Under well-established Nevada law regarding sureties, "in the case of a surety sued on a bond, the surety generally has no culpability whatsoever, and the entirety of its obligation arises from its undertaking on behalf of the indemnitor and principal obligor." *Transamerica Premier Ins. Co. v. Nelson*, 110 Nev. 951, 956, 878 P.2d 314, 317 (Nev.1994); accord *Hartford Fire Ins. Co. v. Trustees of Const. Industry*, 125 Nev. 149, 164, 208 P.3d 884, 894 (Nev.2009)(recognizing surety's rights to be indemnified arise under both the terms of the GAI and "principles of equity"); *Insurance Co. of the West v. Gibson Tile Co., Inc.*, 122 Nev. 455, 461, 134 P.3d 698, 701 (Nev.2006)(surety is entitled to indemnity regardless of whether

any payment is ultimately made by the surety); see also *Ins. Co. of the West v. Gibson Tile Company, Inc.*, 122 Nev. 455, 134 P.3d 698 (Nev.2006)(surety has the right to pursue its indemnification claims under the plain terms of a general indemnity agreement).

Travelers has thus far been compelled to perform its bond obligations without the benefit of its bargained-for rights under the GAI, including total access to WBI's and PCC's books, records, and accounts.  As set forth in the declaration of Gerald Ormiston, Travelers has already paid bond claims and incurred costs, expenses, and attorneys' fees of $2,529,574.07 as to WBI Bonds and $2,317,308.41 as to PCC Bonds.  Although WBI and PCC have provided certain selected documents, they have not opened their complete files to Travelers as required by the GAIs. As an example, WBI and PCC have denied Travelers access to several important categories of documents that would assist Travelers in completing the contracts and evaluating claims, including subcontractor files (which should include subcontracts, purchase orders, correspondence, payment applications, subcontractor claims, and other documents), project schedules, bid and estimate files, claims files (including pleadings and documents), and job cost and accounting records.  Such documents are unique and cannot be duplicated from other sources.  Without the project records, Travelers cannot readily take over defaulted projects, to the detriment of the owners, and the public at large as the projects completion will be delayed substantially.

WBI and PCC simply have refused to comply with their agreement to provide access to their documents.  As noted by the Nevada Supreme Court in *Chisolm,* which affirmed the trial court's preliminary and permanent injunctions against a recalcitrant guarantor, "[a] court of equity . . . will not suffer men to depart from their agreements at pleasure . . . .") *Chisolm,* 347 P.2d. at 525.   And neither should this Court.   The balance of equities lies entirely with Travelers.

### C. Travelers clearly will succeed on the merits.

Under Nevada law, as is applicable in this action based on diversity, the scope of a contractual indemnity agreement is determined by the contract and is generally interpreted like any contract. *George L. Brown Ins. v. Star Ins. Co.*, 237 P.3d 92 (Nev. 2010).  Specifically as

1   to a GAI, such as in this case, the "purpose of the GIA to hold the surety harmless for all

2   expenses consequential to the issuance of the bond." *Transamerica Premier Ins. Co. v. Nelson*,

3   110 Nev. 951, 956, 878 P.2d 314, 317 (Nev.1994); accord *Insurance Co. of the West v. Gibson Tile*

4   *Co., Inc.*, 122 Nev. 455, 461, 134 P.3d 698, 701 (Nev.2006)(surety is entitled to indemnity

5   regardless of whether any payment is ultimately made by the surety); see also *Ins. Co. of the*

6   *West v. Gibson Tile Company, Inc.*, 122 Nev. 455, 134 P.3d 698 (Nev.2006)(surety has the right

7   to pursue its indemnification claims under the plain terms of a general indemnity

8   agreement).

9        As noted by the Nevada Supreme Court in *Nelson*, "in the case of a surety sued on a

10   bond, the surety generally has no culpability whatsoever, and the entirety of its obligation

11   arises from its undertaking on behalf of the indemnitor and principal obligor.  Therefore,

12   the GIA entitles the surety to full recovery . . . ." *Nelson*, 110 Nev. at 956, 878 P.2d at 317.

13   The *Nelson* court reversed summary judgment in favor of the indemnitors and remanded

14   for entry of judgment in favor of the surety because, as in this case, the GAI provided that

15   evidence of payment was "prima facie evidence of the propriety, amount and existence of

16   Indemnitors' liability." (GAI, ¶ 3).

17        As set forth in the Ormiston declaration, Travelers has paid bond claims and

18   incurred costs and attorneys' fees of $2,529,574.07 as to WBI Bonds and $2,317,308.41 as to

19   PCC Bonds.  Under the terms of the GAIs, and Nevada law, WBI and PCC must "exonerate,

20   indemnify and save [Travelers] harmless from and against all Loss."  In fact, under the

21   terms of the GAIs, WBI and PCC agreed that any "evidence of payment shall be prima facie

22   evidence of the propriety, amount and existence of Indemnitors' liability." (GAI, ¶ 3).

23   Neither WBI nor PCC have any defense to these payments and their duty to indemnify

24   Travelers.  There is no question that Travelers will prevail on the merits in this action.

25   **III.   CONCLUSION**

26        Travelers has paid millions of dollars in payment bond claims, and continues to

27   investigate potentially millions more.  To determine who has been paid by WBI and PCC in

28   whole or in part, Travelers needs all bank statements for 2011 and 2012, and checks and

transfers from such accounts, all releases, and project accounting documents.  To evaluate and potentially to take over and complete the bonded projects, Travelers needs access to the project records, including subcontracts, change orders, plans, as-builts, daily logs, and correspondence.  To marshal the remaining assets and to document its rights in equipment, Travelers needs access to equipment lists, appraisals, contracts for auction, and records of transfers of the equipment, as well as records as to any third-party interests therein.

The specific terms of the Indemnity Agreement provide Travelers access to all of WBI and PCC books and records.  Travelers has no adequate remedy at law unless WBI and PCC are ordered by this Court immediately to provide access to the books and records as noted herein.  The equities balance entirely on the side of Travelers.  Its liabilities under the bonds is secondary to that of WBI and PCC yet it has paid millions of dollars in payment bond claims without any offer of reimbursement by any indemnitor.  Finally, by virtue of having paid those millions of dollars, under the clear and express terms of the GAIs, Travelers will succeed on the merits in this case.

For all the foregoing reasons, Travelers respectfully requests that the Court grant the preliminary injunction requiring WBI and PCC to provide immediate access to their books and records.

DATED this 25th day of January, 2012.

JENNINGS, HAUG & CUNNINGHAM, LLP

By_____
Elan S. Mizrahi
Attorneys for Plaintiff